UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

RIVA JANES, BRUCE SCHWARTZ,
BETTE GOLDSTEIN and
HILLEL ABRAHAM,
individually and on behalf of all others
similarly situated,

                     Plaintiffs,

     v.

TRIBOROUGH BRIDGE AND TUNNEL
AUTHORITY, METROPOLITAN
TRANSPORTATION AUTHORITY,
JAY H. WILDER, as Chairman
and Chief Executive Officer of the
Metropolitan Transportation Authority, and
JAMES FERRARA, as President of
the Triborough Bridge and Tunnel Authority,

                     Defendants.

-------------------------------------------------------------X

**No. 06-CV-1427 (BSJ)(HBP)**

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' <u>MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

I.   This Case Should Be Certified as a Hybrid 23(b)(2)/(b)(3) Class Action............................... 1

II.  Plaintiffs' Right to Travel Claims Should Be Certified........................................................... 4

III. The "Failure to Protest Taxes" Cases are Inapplicable Here................................................... 7

CONCLUSION............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases:**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......... 3, 9

*Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) .......... 5

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010) .......... 9

*Carey Trans. v. Triborough Bridge and Tunnel Auth.*, 38 N.Y.2d 545 (1976) .......... 7, 8

*Complete Auto Transit v. Brady*, 430 U.S. 274 (1977) .......... 8

*Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707 (1972) .... 5, 6, 8

*In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) .......... 4, 6

*In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124 (2d Cir. 2001) .......... 6

*In the Matter of Tenn. Gas Pipeline Co.*, 657 N.Y.S.2d 269 (N.Y. App. Div. 1997) .......... 10

*Jermyn v. Best Buy Stores, Inc*., 256 F.R.D. 418 (S.D.N.Y. 2009) .......... 6

*Kelen v. Mass. Turnpike Auth*., 2007 WL 1418510 (Mass. Super. Ct. May 3, 2007) .......... 4

*King v. New Rochelle Mun. Hous. Auth*., 442 F.2d 646 (2d Cir. 1971) .......... 4

*Kinkopf v. Triborough Bridge & Tunnel Auth.*, 792 N.Y.S.2d 291 (N.Y. App. Term 2004) .......... 8

*Morris v. Burchard*, 51 F.R.D. 530 (S.D.N.Y. 1971) .......... 5

*Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355 (1994) .......... 5, 6, 8

*Parker v. Time Warner Enter. Co., LP*, 331 F.3d 13 (2d Cir. 2003) .......... 2

*People v. Blasich*, 73 N.Y.2d 673 (1989) .......... 10

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) .......... 2, 3

*Sands v. Manistee River Improvement Co.*, 123 U.S. 288 (1887) .......... 8

*Selevan v. New York Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009) .......... *passim*

*Surprenant v. Mass. Turnpike Auth*., 2010 WL 785306 (D. Mass. Mar. 4, 2010) .......... 4

*Video Aid Corp. v. Town of Wallkill*, 85 N.Y.2d 663 (1995) ...................................................... 9, 10

**Statutes & Rules:**

Fed. R. C. P. 23(a) ................................................................................................................ 1

Fed. R. C. P. 23(b)(2) ..................................................................................................... *passim*

Fed. R. C. P. 23(b)(3) ..................................................................................................... *passim*

N.Y. Penal L. § 165.15 ......................................................................................................... 10

N.Y. Pub. Auth. L. §550, *et seq.* ........................................................................................... 9

**Other Authorities:**

A. CONTE AND H. NEWBERG, NEWBERG ON CLASS ACTIONS, §§ 6.15, 25.20 (4th ed. 2002) ......... 3

PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 2.02(A)(1) (Am. Law Inst. 2010) ............ 1

Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Mem.") offers nothing to dispute that this litigation is virtually the archetype of a case appropriate for class treatment.  The determination of the constitutionality of Defendants' toll discount program for certain facilities ("Bridges"), offered only to a geographic subset of New Yorkers, presents fundamentally a core set of legal issues that were addressed in *Selevan v. New York Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009) ("*Selevan*").  In the words of the recently adopted American Law Institute's Principles of Aggregate Litigation, class treatment of constitutional claims would "materially advance the resolution of multiple civil claims by addressing the core of the dispute in a manner superior to other realistic procedural alternatives, so as to generate significant judicial efficiencies."  PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 2.02(A)(1) (Am. Law Inst. 2010); *see also id.* at § 2.01 ("[c]ommon issues are those legal or factual issues that are the same in functional content across multiple civil claims").

Defendants do not controvert – and hence concede – that the Rule 23(a) criteria of numerosity, commonality, typicality and adequacy are met.  They also do not and cannot challenge – and thus concede— that this litigation meets the superiority requirement of Rule 23(b)(3).  Nor do they deny the propriety of a Sub-Class for the New York-specific claims.

Instead, Defendants – somewhat half-heartedly – assert three supposed impediments to Plaintiffs' certification motion.  We address Defendants' points *seriatim* below.

I.      **This Case Should Be Certified as a Hybrid 23(b)(2)/(b)(3) Class Action.**

Defendants first challenge Plaintiffs' request for Rule 23(b)(2) certification on the ostensible grounds that money damages claims here predominate (Def. Mem. 8-11).  Defendants assert that because the "sky-high" damages claims may be worth millions of dollars per year

1

(Def. Mem. 10), then monetary damages must predominate.  Aside from a misstatement or two,[1] the error in Defendants' argument is that the damages claims may be substantial, but only in the aggregate.  On an individual basis they are certainly not sufficient to warrant litigation – indeed, they could end up being so small as to be truly "incidental" and *de minimis* in size.[2]  Under Second Circuit law, when considering a motion for Rule 23(b)(2) certification of a claim seeking both injunctive relief and non-incidental monetary damages, the court must "assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001); *Parker v. Time Warner Enter. Co., LP*, 331 F.3d 13, 20 (2d Cir. 2003).

> Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following:  (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.  Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

*Robinson*, 267 F.3d at 164; *Parker*, 331 F.3d at 20.

Even facing the likelihood of a small monetary recovery (see n.2 below), reasonable plaintiffs would bring this suit to obtain injunctive or declaratory relief.  This case was brought

---

[1] Defendants, perhaps inadvertently, assert that Plaintiffs seek to "compensate every person in a four-state area who crossed one of the bridges" (Def. Mem. at 9) while the proposed Class and Sub-Class, of course, are limited to E-ZPass users.  Defendants also write ( Def. Mem. at 11) that "New York courts handling challenges to fees or tolls have often declined to certify class actions against governmental entities . . . ." but neither of the two cases then cited relate to tolls at all.

[2] For example, if damages were ultimately determined to be a portion of the amount of the discount that was accorded the geographically-preferred users (as opposed to the entire amount that Plaintiffs paid more than did those preferred users), the amounts, when spread out among the proposed Class members, would, quite likely, be truly *de minimis*.

2

as a class action because of the relatively small value of the individual class members' claims compared to the litigation costs. Although each Plaintiff desires some compensation, Plaintiffs' intent is to obtain a declaration that Defendants' discriminatory toll schemes are unconstitutional and an injunction barring further implementation so that Plaintiffs will not pay discriminatorily higher tolls going forward. Indeed, it is also possible that Defendants may decide, even if they have to pay some monetary relief, that the political pressures to keep the discounts after resolution of the damage claims in this case override the cost of defending damage claims arising again. That makes it manifest why monetary damages may never suffice, and why the significant Constitutional issues of the discount program form the heart of this litigation. It is also why civil rights cases are considered exemplars of litigations appropriate for Rule 23(b)(2) treatment. *See* A. CONTE AND H. NEWBERG, NEWBERG ON CLASS ACTIONS, §§ 6.15, 25.20 (4th ed. 2002); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) class actions); FED. R. CIV. P. 23(b)(2) advisory committee's note (civil rights cases are illustrative of the types of appropriate cases for Rule 23(b)(2) certification).

       This action meets the criteria in *Robinson*, this Circuit's governing case, that "the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Robinson*, 267 F.3d at 165. Rule 23(b)(2) certification is warranted, even though actual damages are sought, because a damages award would not suffice.[3]

---

[3] Defendants' argument that because of *stare decisis*, a victory by a single class member would effectively represent a victory by a potential Rule 23(b)(2) class proves well too much. The argument that a victory by a single person may compel an entity to change its ways (and thereby obviate the need for any Rule 23(b)(2) class) could almost <u>always</u> be made to oppose a Rule 23(b)(2) motion. The point is that a class-wide injunction obtains the relief for all and does not require the rest of the class to file suit to obtain the same results. Defendants' counsel could not find a supporting case and instead try (Def. Mem. at 11) to shoe-horn in two New York state cases involving superiority issues, not Rule 23(b)(2)/(b)(3) issues.

3

Finally, Defendants' 23(b)(2) argument wars, in practical terms, with their (b)(3) argument. Defendants assert (wrongly, *see* pages 8-11, below), that any claims for damages are barred where the individual class members did not "protest" the tolls. *See* Def. Mem. at 15-19. That is tantamount to saying that the entirety of the Class (and Subclass) may be barred from monetary recovery since, aside from this lawsuit, no one in the Class has protested the tolls (undoubtedly because the issues of constitutional law implicated are subtle and recondite, and the amounts at issue per person are relatively small). Accordingly, so long as a possibility exists that Defendants could prevail on this "failure to protest" defense, it is clear that the injunctive claims form a core and predominate aspect of this case.

## II. Plaintiffs' Right to Travel Claims Should Be Certified.

Defendants next assert that any claims that implicate a right to travel will present individualized issues of "burden" so that superiority is destroyed. There are multiple problems with this argument. Even if Defendants could succeed in preventing certification of the right to travel claim, they have offered nothing to contest the certification of Plaintiffs' several other claims under the United States and New York Constitutions. For example, Plaintiffs' Dormant Commerce Clause claims are not impacted by this argument.[4] *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) ("courts may use subsection (c)(4) to single out

---

[4] In support of this argument, Defendants cite to two Massachusetts cases, *Surprenant v. Mass. Turnpike Auth.*, No. 09 CV 10428, 2010 WL 785306, at *7 (D. Mass. Mar. 4, 2010), and *Kelen v. Mass. Turnpike Auth.*, 2007 WL 1418510, at *2 (Mass. Super. Ct. May 3, 2007). As an initial matter, the two Massachusetts-based decisions are inapposite in that they were, in part, considering the right to travel to be limited to interstate travel, whereas Second Circuit law holds that it also encompasses intrastate travel. *See King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971). Further, (1) neither of these cases state that individualized determinations are necessary to determine whether a toll violates the right to travel; (2) neither arose in a Rule 23 context; (3) neither presented the facial *Evansville* analysis the Second Circuit in *Selevan* has ordered here; and (4) both arose in the factually disparate context where a traveler could avoid, with little cost or burden, using the Massachusetts defendants' facilities, there being a plethora of other roads and "alternatives." There exists no such plethora of options to the Bridges because only via circuitous meanderings can one avoid crossing them.

4

issues for class treatment when the action as a whole does not satisfy Rule 23(b)(3)"); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000) (certification gets determined on a claim by claim basis); *see also, e.g., Morris v. Burchard*, 51 F.R.D. 530 (S.D.N.Y. 1971) (certifying non-fraud claims, but not fraud-based claims, due to individual reliance concerns).

As to Defendants' "burden" point, *first*, as *Selevan* explicitly held, the issue of whether discriminatory tolls may be "merely a minor restriction on travel that does not amount to the denial of a fundamental right" only arises <u>after</u> the Court determines whether the tolls violate the strict scrutiny test established under *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 712 (1972). *See Selevan*, 584 F.3d at 102. The "minor restriction on travel" question is analyzed under a "*Northwest Airlines*" test. *Id.* (referring to *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355 (1994)). Since individual issues are not even arguably present under the *Evansville* analysis, the first prong of inquiry faced on the right to travel claims is a purely class-wide one equally applicable to <u>all</u> class members. While Plaintiffs believe they will prevail (and Defendants assert otherwise), until and unless there is such a determination, an issue paradigmatically appropriate for class treatment is presented.

*Second*, even were Plaintiffs to fail on their *Evansville* proof, certification would still remain proper because the parameters of how to analyze any individual right to travel claim under *Northwest Airlines* are decidedly unclear and in flux. A class-wide issue exists how one would apply or interpret – or what the legal parameters would be and how individualized they might or might not be – whether these are "minor restriction[s] on travel that do[] not amount to the denial of a fundamental right." *Selevan*, 584 F.3d at 102 (internal quotes and quotation omitted). Certainly, there will be categories of individuals who do use one or more of the Bridges every day or routinely for work – indeed, Defendants attempt to distinguish Plaintiffs

5

Goldstein and Abraham from the other named Plaintiffs on such a basis (Def. Mem. at 14). Inasmuch as some members of the class may have a claim not subject to challenge on the right to travel, the proper approach could well be subclassification or partial decertification. That consideration would only arise after, and should await the day of, the *Evansville* determination.[5]

*Finally*, even aside from the foregoing, the mere existence of potential individual issues does not defeat the overriding and predominant common issues. In effect, Defendants' argument is akin to arguing that there are individualized issues of liability and extent of harm, if any. But that is not sufficient to defeat class certification where there is, at the core, overriding issues of constitutionality of a policy. *See In re Nassau County Strip Search Cases*, 461 F.3d at 225 (holding that "so long as a sufficient constellation of common issues binds the class members together, variations in the sources and application of a defense will not automatically foreclose class certification") (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001)); *Jermyn v. Best Buy Stores, Inc.*, 256 F.R.D. 418, 429-30 (S.D.N.Y. 2009) ("[Individualized] differences [such as evidence] are primarily relevant to the amount of damages to which a class member may be entitled if and when liability is established . . . . Defendant's argument would turn the commonality requirement on its head by making it impossible to certify a class if *any* individualized issue existed.").[6]

---

[5] As long as some part of the Class may possess a *Northwest Airlines* right to travel claim (as Defendants seem to admit), then there is the particular value of certification identified in *In re Nassau County Strip Search Cases*, 461 F.3d at 225: "Absent class certification and its attendant class-wide notice procedures, most of these individuals – who potentially number in the thousands – likely never will know that defendants violated their clearly established constitutional rights, and thus never will be able to vindicate those rights. As a practical matter, then, without use of the class action mechanism, individuals harmed by defendants' policy and practice may lack an effective remedy altogether."

[6] Even assuming individual issues existed were Plaintiffs not to prevail on their *Evansville* proof, the often-repeated words of *In re Visa* would particularly apply to the present case:

> There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating

6

In short, there are predominant right to travel claims that can and should be addressed, at least at this stage of the litigation, on a class-wide basis.

### III.     The "Failure to Protest Taxes" Cases are Inapplicable Here.

Relying on several New York State lower court opinions, Defendants lastly strain to assert that the tolls at issue are equivalent to taxes, and that Plaintiffs' (and the Putative Class's) failure to protest the tolls vitiated their claims because tolls are subject to the same protest requirement as taxes. While Defendants say this is a matter of individualized inquiry, since, as noted, there are no such individuals who have protested the tolls (and Defendants do not assert there are any), Defendants are really arguing there are no viable damage claims.

Defendants err. They neglect to inform this Court that the TBTA <u>itself</u> benefited from a decision by the New York Court of Appeals that its tolls are not taxes, a decision that remains good and binding law. In *Carey Trans. v. Triborough Bridge and Tunnel Auth.*, 38 N.Y.2d 545 (1976), the Court of Appeals, confronted with the TBTA's toll classification of franchised buses, framed the issue as whether the "Authority in the operation of its facilities may fix tolls and charges which in its judgment will best serve its economic goals and public policy goals, including economic differentiation among its charges so long as there is not involved any of the invidious discriminations condemned by statute or Constitution, or some utterly arbitrary discrimination not related to economic considerations or some accepted public goal." *Carey*, 38 N.Y.2d at 550. Although *Carey* did not address the type of discriminatory toll practices present

---

        liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

*In re Visa*, 280 F.3d at 141.

7

in this case, the Court of Appeals did discuss whether tolls are taxes. In so doing, the Court refused to draw the analogy that the TBTA wishes to make between its tolls and taxes writing that "as a toll collector the Authority is more akin to an entrepreneur than a tax collector . . . ." *Carey*, 38 N.Y.2d at 552.[7]

The United States Supreme Court addressed this same issue in *Sands v. Manistee River Improvement Co.*, 123 U.S. 288 (1887), which also remains good law to date, holding:

> There is no analogy between the imposition of taxes and the levying of tolls for improvement of highways; and any attempt to justify or condemn proceedings in the one case, by reference to those in the other, must be misleading. Taxes are levied for the support of government, and their amount is regulated by its necessities. Tolls are the compensation for the use of another's property, or of improvements made by him; and their amount is determined by the cost of the property, or of the improvements, and considerations of the return which such values or expenditures should yield . . . . The whole subject is one of administrative regulation, in which a certain amount of discretionary authority is necessarily confided to officers entrusted with its execution. Should there be any gross injustice in the rate of tolls fixed, it would not, in our system of government, remain long uncorrected.

*Sands*, 123 U.S. at 294. Justice Cooke, in his concurrence in *Carey*, stated the point with complete clarity: "This is so simple because tolls and taxes are not the same." *Carey*, 38 N.Y.2d at 556. *Carey* disposes of the TBTA's last argument against certification but, even aside from *Carey*, there are other reasons why Defendants' position is misplaced.

---

[7] Admittedly, there are various cases that somewhat loosely use the term "taxes" and "use taxes" to describe exactions imposed by governmental entities (or, as here, quasi-governmental entities – and it is a fine point that need not be resolved now as to how much of a government entity the TBTA is and how fully it can cloak itself in forms of governmental immunity). *See, e.g., Kinkopf v. Triborough Bridge & Tunnel Auth.*, 6 Misc. 3d 73, 792 N.Y.S.2d 291 (N.Y. App. Term 2004) (referring to the TBTA's tolls as "in essence a use tax," citing earlier, pre-*Carey* precedent). There are also cases that loosely use the term "fee" for what is essentially a municipal tax. *See*, *e.g.*, *Video Aid Corp. v. Town of Wallkill*, 85 N.Y.2d 663 (1995) (referring to "sewer and water tap-in fees" the "taxpayer" remitted to the municipality). But the point is that Defendants cannot point to a single case where a protest requirement has been imposed on something akin to a toll/use charge. That Defendants cannot has to arise from the fact that "tolls" are not the same as "taxes," which is what the Court of Appeals recognized in *Carey*, and what the Second Circuit implicitly recognized in *Selevan*. Thus, *Selevan* called for analyzing the constitutionality of a similar toll discount by applying the *Evansville/Northwest Airlines* test for differential user fee schemes; it did not call for using the text for analyzing differential tax schemes set out in *Complete Auto Transit v. Brady*, 430 U.S. 274, 279 (1977).

8

*First*, even if there remained any question about whether the tolls were equivalent to taxes, that issue – which exists as to all members of the Class (and Sub-class) including the named Plaintiffs – alone presents a core and overriding common legal issue. In effect, it asks, as a matter of law, whether any damage claims exist here. The paramount nature of this pure and predominant legal issue alone presents a matter of constitutional import that should be addressed on a class, not individual, basis. *See Brown v. Kelly*, 609 F.3d 467, 483-86 (2d Cir. 2010); *see also Amchem*, 521 U.S. at 614.

*Second*, and relatedly, this case is markedly different from the municipal tax/fee cases upon which Defendants rely because in them the payment of taxes was done through a discrete transfer of funds – usually by check – to the government.[8] Thus, Defendants' lead case, *Video Aid Corp. v. Town of Wallkill*, 85 N.Y.2d 663 (1995), predicated its view that a protest can be necessary because the option existed for "a simple payment 'under protest' which the majority stated could be as simple as writing 'without prejudice' or 'under protest' on the check they tendered as payment." *Id.* at 668, 670 ("Short of that simple, unequivocal step – plainly important to governmental fiscal operations – a taxpayer may recover an illegal payment only where the taxpayer established that payment was made under duress . . . ."). Here, obviously, there is no such "simple, unequivocal step" permitting protest. A driver could not have yelled, "I protest" as she drove through TBTA toll plazas, and, even if she did, it would have been

---

[8] Aside from the mode of presentation, the payments here also differ from those made in Defendants' municipal cases in other ways. The payments here were made to the TBTA, a quasi-governmental entity, that, unlike municipalities, has no authority under state law to even collect taxes. *See* N.Y. Pub. Auth. L. §550, *et seq.* Further, the TBTA, unlike municipalities and other true governmental entities, earns hundreds of millions of dollars in operating income annually and has no constituents other than its bondholders. As such, Defendants have no valid basis to assert that the exactions here are taxes, nor that the corporation collecting them is entitled to the protection of a protest requirement.

meaningless in informing the government of the protest.[9]  But, even if one could countenance an analogy to the tax/fee cases upon which Defendants rely, the named Plaintiffs are in as good a position as anyone in the Class to argue that, under the totality of the circumstances (the relevant test, *see id.* at 666-67), the payment of the unconstitutional tolls was not voluntary.

*Finally*, even were a protest necessary in some manner, precedent recognizes that the filing of a lawsuit, such as this, can itself constitute the proper notice.  *See In the Matter of Tenn. Gas Pipeline Co.*, 657 N.Y.S.2d 269, 271 (N.Y. App. Div. 1997).

## CONCLUSION

For the foregoing reasons and for the reasons set forth in their opening papers in support of the motion, Plaintiffs request that this Court grant their Motion for Class Certification.

Dated:  Rye Brook, New York
       October 27, 2010

Respectfully submitted,

By:    /s/ Seth Lesser
     Seth R. Lesser
     Fran L. Rudich
     **KLAFTER OLSEN & LESSER LLP**
     Two International Drive, Suite 350
     Rye Brook, New York 10573
     (914) 934-9200

     Harley J. Schnall
     **LAW OFFICE OF HARLEY J. SCHNALL**
     711 West End Avenue
     New York, New York 10025
     (212) 678-6546

     *Attorneys for Plaintiffs*

---

[9] A failure to pay could have subjected the individual to arrest – the very definition of duress.  *See* N.Y. PENAL LAW § 165.15;  *see, e.g.*, *People v. Blasich*, 73 N.Y.2d 673, 679 (1989) (discussing validity of arrest of a motorist for leaving a parking lot without paying the fee); *cf. Video Aid Corp.*, 85 N.Y.2d at 667 (when payment is made "under actual duress or coercion, which is present when payment is necessary to avoid threatened interference with present liberty of person or immediate possession of property, the failure to formally protest will be excused.").