UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                                                    :

RIVA JANES et al.,                                                           :

                                                                               :             06 Civ. 1427 (PAE)

                                                     Plaintiffs,         :

                             -v-                                     :             <u>OPINION & ORDER</u>

                                                                               :

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY  :
et al.,                                                                         :
                                       Defendants.      :
                                                                               :
------------------------------------------------------------------------X

**PAUL A. ENGELMAYER, District Judge:**

       Defendants Triborough Bridge and Tunnel Authority, Metropolitan Transportation Authority, Jay H. Walder, and James Ferrara move for reconsideration of the Court's October 5, 2011 Order granting in part and denying in part plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2). For the following reasons, defendants' motion for reconsideration is granted.

I.      **Procedural History**

       This class action arises out of a differential toll policy administered by defendant Triborough Bridge and Tunnel Authority, which is a constituent agency of the Metropolitan Transportation Authority. This toll policy provides discounts on tolls to cross the Verrazano-Narrows Bridge for certain residents of Staten Island, New York, and discounts on tolls to cross the Marine Parkway and Cross Bay Bridges for certain residents of the Rockaway Peninsula and Broad Channel, also in New York. Drivers must use E-ZPass, an electronic toll debit system, to qualify for the discount.

Plaintiffs are users of E-ZPass within New York and three neighboring states who crossed at least one of these bridges and did not qualify for these discounts.  Plaintiffs allege that, because they paid higher prices to cross the bridges than those individuals covered by the discount toll policy did, the policy is unconstitutional.  Specifically, they argue that the preferences within the toll policy violate the Commerce Clause, Art. I, § 8, Cl. 3, the Privileges and Immunities Clause, Art. IV, § 2, Cl. 1, the Privileges or Immunities Clause, Amend. XIV, § 1, Cl. 2, and the Equal Protection Clause, Amend. XIV, § 1, Cl. 4, of the United States Constitution and Article I, § II of the New York State Constitution.  Plaintiffs seek declaratory relief, an injunction against the continuation of the toll policy, and money damages.

On September 2, 2010, the four named plaintiffs in the case moved for class certification pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).  (Dkt. 41.)  Their proposed class definition was:

> With regard to the [federal causes of action] in the First Amended Complaint, all users of E-ZPass who, while residing in, New York, Pennsylvania, New Jersey, and Connecticut and who, since January 17, 2000 [] paid tolls at the Verrazano-Narrows Bridge, the Cross Bay Veterans Memorial Bridge or the Marine Parkway Gil Hodges Memorial Bridge without the benefit of the resident discount that has been made available by Defendants for residents of specific locations in New York State.

Pls.' Mem. of Law in Support of Mot. for Class Cert. 1.  (Dkt. 42.)

After the motion for class certification was fully briefed, but before the Court had rendered a decision, the Supreme Court issued its opinion in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  In light of the importance of the *Wal-Mart* decision to federal class action law, the Court requested supplemental letter briefing from the parties on the impact, if any, of that decision on the pending motion in the instant case.  In their July 11, 2011 letter, defendants

noted, *inter alia*, that the plaintiffs' proposed class definition encompassed members who, if the toll policy were held unconstitutional, might be entitled to damages (because they had paid non-discounted tolls in the past), but who, for various reasons, lacked standing to pursue forward-looking injunctive or declaratory relief. (Dkt. 56.) As examples of such persons, defendants identified persons who: (1) "no longer drive[] at all"; (2) have "moved out of the area and no longer cross[] the three bridges at issue"; or (3) have "moved to an area (such as Staten Island) where [they are] entitled to a residence-based discount." Defs.' Ltr. Br. 15–16. (Dkt. 56.)

On October 5, 2011, the Hon. Barbara S. Jones, to whom this case was then assigned, issued an opinion and order granting in part and denying in part plaintiffs' motion for class certification. (Dkt. 51.) The Court, pursuant to its authority under Fed. R. Civ. P. 23(c)(4), certified what it termed "an injunctive class" under Rule 23(b)(2). This class sought solely declaratory and injunctive relief, based on plaintiffs' federal constitutional claims. The Court then bifurcated the proceedings, pursuant to Fed. R. Civ. P. 42(b), with one phase focused on federal claims, none of which seek monetary relief, and a second phase focused on state-law damages claims. The Court declined, for the time being, to address whether a class could properly be certified for the damages phase of the case. The Court did not address defendants' arguments with respect to the proper definition of the injunctive class.[1]

On October 7, 2011, the case was reassigned to this Court. (Dkt. 52.) On October 19, 2011, defendants filed a timely motion for reconsideration of the motion for class certification, asking the Court to deny plaintiffs' motion "to the extent that the putative class . . . includes persons who lack standing to seek injunctive and declaratory relief." (Dkt. 53.) Specifically,

---

[1] Plaintiffs also proposed a sub-class for the purposes of their state law claims, consisting solely of New York State residents. Because Judge Jones reserved decision on certification of the plaintiffs' state law issues, her opinion and order did not address certification of the sub-class. Neither does this opinion.

3

defendants argue that three categories of individuals currently included in the class should be excluded from the 23(b)(2) class: (1) current residents of Staten Island, the Rockaway Peninsula, and Broad Channel; (2) persons who no longer have a driver's license or who no longer in fact drive; and (3) persons who have not crossed any of the bridges at issue within the two years preceding entry of the certification order.

## II.     Legal Standard on a Motion for Reconsideration

The standard for granting a motion for reconsideration is "strict": to succeed, such a motion must "point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The party seeking reconsideration must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Where a court overlooked "matters or controlling decisions which, if considered by the Court, would have mandated a different result," a motion for consideration should be granted in order to avoid manifest injustice. *Thomas v. United States*, 02-cv-6254, 2005 WL 2104998, at *2 (S.D.N.Y. Sep. 1, 2005).

In order to be considered under a motion for reconsideration, an argument must have been previously presented to the court. *See, e.g.*, *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (a motion for reconsideration is "not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion").

## III.    Analysis

The Court finds that defendants have justified reconsideration of the discrete portion of the October 5, 2011 decision pertaining to the definition of the Rule 23(b)(2) class.

First, the arguments advanced by defendants were previously presented to the Court and hence are not impermissible new theories. In their July 11, 2011 supplemental letter brief, defendants specifically argued that "any putative class certified under Rule 23(b)(2) would need to exclude class members with no interest in injunctive or declaratory relief," and identified as examples persons who no longer drive, who no longer cross any of the three bridges, or who moved to an area in which they would be entitled to the discount toll. Defs.' Ltr. Br.15–16. (Dkt. 56.)

Second, the prior opinion and order addressing class certification to pursue injunctive and declaratory relief did not address standing, despite defendants having raised that issue in their letter brief following the *Wal-Mart* decision. It appears that issue was overlooked amid the Court's discussion of broader issues relating to class certification and the impact of *Wal-Mart*. Because Article III standing is a necessary predicate to relief, and because there are pragmatic reasons to ensure that the contours of the Rule 23(b)(2) class are drawn consistent with principles of standing, it is proper to grant the motion for reconsideration for the limited purpose of ensuring that all members of the Rule 23(b)(2) class have standing.

    **1.**    **Article III Standing in the Class Action Context**

Article III standing is "'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Every plaintiff in a federal judicial action "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009); *see also Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *Warth*, 422 U.S. at 498–99 (a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction").

To have Article III standing, a plaintiff must satisfactorily allege: (1) a concrete, particularized, and "actual or imminent" injury; (2) "a causal connection between the injury and the conduct complained of"; and (3) a "likel[ihood] . . . that the injury will be redressed by a favorable decision" of the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992) (internal quotation marks and citation omitted).

Where, as here, a plaintiff seeks injunctive relief, that plaintiff must adequately allege that he or she is presently "under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers*, 555 U.S. at 493 (citing *Friends of Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

In the context of a class action, this Circuit does "not require that each member of a class submit evidence of personal standing." *Denney*, 443 F.3d at 263. However, "no class may be certified that contains members lacking Article III standing." *Id.* at 264; *see also Wal-Mart*, 131 S. Ct. at 2560 (former employees of a store do not have standing to seek injunctive relief against their former employer, and therefore cannot serve as part of a class certified to seek forward-looking injunctive relief); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 334 (S.D.N.Y. 2003) ("each member of the class must have standing with respect to injuries suffered as a result of defendants' actions"). Thus, the contours of the class must be drawn consistent with the requirements of standing, set forth above.

### 2. Certain Individuals Encompassed Within the Current Class Definition In Fact Lack Standing

Defendants argue that the current class definition includes persons who lack standing to seek injunctive or declarative relief. The Court agrees, as it appears that the current class

definition was drawn with an eye towards persons with putative damage claims, as opposed to claims for injunctive or declaratory relief.

It is well-established that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (internal quotation marks and citation omitted). Rather, to have standing to seek forward-looking injunctive or declarative relief to prevent an alleged wrong, a plaintiff must show he is "realistically threatened" with recurrence of this wrong. *Id.* at 106; *see also Lujan*, 504 U.S. at 564 ("'someday' intentions—without any description of concrete plans . . . —do not support a finding of the 'actual or imminent' injury that our cases require").

In this case, while having paid a non-discounted toll at some point since January 17, 2000 supplies a modicum of a basis to presume that a person will do so again, there are contexts in which that presumption is overcome, such that it is not credible to claim that the class member is "under threat of suffering injury in fact that is . . . actual and imminent" due to the differential toll policy. *Summers*, 555 U.S. at 493. Specifically, defendants identify three categories of persons who they claim lack standing to pursue injunctive or declaratory relief.

First, defendants argue, a person who previously was ineligible for a toll discount, but is now eligible for it—by virtue of living in Staten Island, the Rockaway Peninsula, or Broad Channel—is not under threat of suffering an actual and imminent harm. The Court agrees. Rather than facing the prospect of future injury, these individuals stand to benefit from the

differential toll policy.  They therefore do not have the requisite "personal stake in the outcome" of any decision as to injunctive or declarative relief.  *Lyons*, 461 U.S. at 101.[2]

Second, defendants argue, persons who are deceased, or who no longer have driver's licenses, lack a personal stake in forward-looking relief.  The Court agrees.  Although it is possible that a person may reacquire a driver's license—just as it is possible a resident may relocate from a location covered by the discount toll to one that is not—that chain of events is too speculative to satisfy the requirement of "actual and imminent" harm.  *See Lyons*, 461 U.S. at 102–03 ("The most that could be said for plaintiffs' standing was that *if* [plaintiffs] proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed.") (internal quotation marks and citation omitted).

Third, defendants argue, persons who have not driven over any one of the three bridges during the two years prior to the Court's October 5, 2011 certification order lack standing to seek injunctive or declarative relief.  The Court agrees.  Although an out-of-state resident who crossed one of the bridges years ago conceivably may do so again, where the resident has not done so in the past two years, it is not persuasive to classify such a person among those "realistically threatened" with injury from the differential toll policy.  The Court will thus exclude such persons from the class.

In addition to ensuring that all members of the Rule 23(b)(2) class have the requisite personal stake in forward-looking relief necessary to satisfy Article III, narrowing the class to

---

[2] Plaintiffs argue that a beneficiary of the discounted toll policy as to one of the three bridges may nevertheless be injured, to the extent that he or she crosses a different bridge as to which he or she is ineligible for the discount.  Although it is certainly possible that such residents exist as to whom the toll discount policy works a net monetary detriment, this scenario is too conjectural to justify inclusion of such persons in the Rule 23(b)(2) class.

those with credible claims of future injury also has a practical benefit: It serves to protect the rights of putative class members and the defendants should the toll policy be found constitutional as to some time periods but not others. As the parties agreed at oral argument, it is conceivable that the differential toll policy will be upheld as to some periods but not others. This is so both because of variations in the toll structure over time and because the constitutionality of the policy may turn on factors that are non-static, such as the impact of the differential toll policy on interstate commerce and the extent to which the toll pricing structure is shown to further valid state interests.

Were the Rule 23(b)(2) class defined to include persons whose claims were purely historical, there would be a risk that the outcome of the injunctive phase—which turns on, and would decide, only the current validity of the policy—would be incorrect as to some or all of such persons. Denial of forward-looking relief should not automatically bind persons whose claims of damage arose in earlier years as to which the decisive facts conceivably may be different. Nor should granting injunctive relief automatically establish defendants' liability as to such persons, absent a finding that the material facts relating to historical and current class members are the same. Limiting the injunctive class to persons with Article III standing thus serves to protect the interests of plaintiffs and defendants in being bound as to liability only where appropriate.[3]

---

[3] To be sure, it is quite possible that the liability issues will prove identical across the 12-year class period—the Court does not prejudge that issue. The Court understands and appreciates that the parties are conducting plenary discovery with regard to that entire period. The Court is hopeful that, because all discovery will be complete as of the point when plaintiffs' request for injunctive and declaratory relief is decided, the process thereafter of determining liability as to a damages class (if certified) will be streamlined.

3.       **The Revised Class Definition**

For the reasons above, the Court will narrow the Rule 23(b)(2) class, so that the class boundaries are drawn to exclude persons who lack standing to seek injunctive or declarative relief.

The class for the Rule 23(b)(2)/liability phase of this case is therefore defined as follows: With regard to the First, Third, and Fourth Causes of Action in the First Amended Complaint, all users of E-ZPass who, while residing in New York, Pennsylvania, New Jersey, or Connecticut, and who, since January 17, 2000, paid tolls at the Verrazano-Narrows Bridge, the Cross Bay Veterans Memorial Bridge, or the Marine Parkway Gil Hodges Memorial Bridge without the benefit of the resident discount that has been made available by defendants for residents of specific locations in New York State.  Excluded from the class are: (1) current residents of Staten Island, the Rockaway Peninsula, and Broad Channel; (2) persons who no longer have a driver's license or who are no longer living; and (3) persons who have not crossed any of the bridges at issue within the two years preceding October 5, 2011.  Also excluded from the class are defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees, or assignees.

## IV. Conclusion

For the foregoing reasons, defendants' motion for reconsideration is hereby GRANTED. For the purposes of the injunctive phase of this litigation, the 23(b)(2) class is certified as described in this opinion and order.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: January 23, 2012
       New York, New York